**FIRST NATIONAL BANK OF JACKSON, MISSISSIPPI, Appellee,**

v.

**N. W. BUNKER, Jr., Appellant.**

No. 73–1489.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1973.

Decided April 3, 1974.

Philip Mansour, Greenville, Miss., for appellant.

William C. Bridgforth, Pine Bluff, Ark., for appellee.

Before VAN OOSTERHOUT and MOORE,* Senior Circuit Judges, and WEBSTER, Circuit Judge.

MOORE, Senior Circuit Judge.

Plaintiff-appellee, First National Bank of Jackson, Mississippi (the Bank), had purchased three retail installment contracts for $125,000. The contracts, on printed forms, evidenced the sale by Tri-State Distributors, Inc., of washing machine equipment to Norge Villages of Greenville, Inc., a corporation formed by N. W. Bunker, Jr. (Bunker), for use in the operation of public, self-service laundering facilities, commonly referred to as "washerettes," "washeterias" or "laundromats." On the reverse side of at least some of the printed forms was an additional personal guaranty contract. The Bank by suit asserts that defendant Bunker signed the guaranty forms, thereby personally committing himself to the obligations of the installment contracts and that upon Norge Villages' default failed to make the payments required under the guaranties. Bunker in turn responded by setting forth six defenses: (1) denial of execution; (2) legal incapacity (mental incompetence) at the time of execution; (3) fraudulent misrepresentations; (4) signature obtained by fraud without consent; (5) usury; and (6) lack of consideration. Bunker demanded a jury trial on the issues thus raised.

At the close of the case, the trial judge decided that there had been no fraud and that, although there was a jury issue as to Bunker's legal capacity, his subsequent acts (even assuming mental incapacity at the time of execution) amounted to a ratification of the guaranties. From the court's direction of a verdict in favor of the Bank, Bunker appeals.

Although the circumstances under which Bunker became involved in the washerette venture are not without significance, the primary appellate issue centers around whether there is any evidence to be found in the rather voluminous record which should have been submitted to the jury on the issue of ratification.

In 1969 Kemp Whisenhunt successfully operated a Norge Village washerette in Blytheville, Arkansas. Hopeful that this success could be duplicated in Greenville, Mississippi, he interested a friend, Curtis Belford, in establishing three washerettes there. The laundry equipment was bought from Tri-State Distributors, Inc., which handled the Norge line, for $186,000 and three suitable buildings were constructed. For various reasons, the Greenville venture did not meet with the success experienced in Blytheville, equipment installments were not paid, leases were in default and utility bills had not been met. In early 1971 Whisenhunt and Belford decided to sell.

A Mrs. Virginia Foley, known to Belford, interested Bunker in the purchase of the washerettes. In a contract dated March 30, 1971, Whisenhunt and Belford, representing themselves as the Sellers, agreed to convey the enterprise to Bunker, the Purchaser. No reference to a personal guaranty by Bunker is found in that contract. The sale as consummated differed substantially from the terms of the March 30th document. The Seller was Tri-State Distributors, Inc.; the Purchaser, Norge Villages, Inc., a corporation organized by Bunker's attorney, Russell. Mrs. Foley and Bunker were the stockholders. The three in-

---

* LEONARD P. MOORE, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

stallment sales agreements were prepared by Houston Jones, owner of Tri-State, on printed forms, on the reverse sides of which, at least in some instances, were the guaranties.

In Greenville, Russell was drafting corporate organization papers, corporate minutes and resolutions and leases. On the evening of April 29, 1971, while Bunker was seriously ill in the hospital in Lake Village, Arkansas, Mrs. Foley took all the papers to him, including the installment contracts. Apparently only Mrs. Foley and Bunker were present in the hospital room. Bunker testified that he remembered nothing of the events of that evening. Mrs. Foley said that she handed the papers to Bunker who signed them while sitting on the side of the bed. On the copies of the installment agreements given to Mrs. Foley, she testified that there were no signed guaranties.

Nevertheless, reference to the Appendix discloses that on the reverse sides of the three installment contracts, presented in evidence by the Bank (Pltf's Exhs. 1, 3, 5), there are six printed paragraphs of conditions. Below these conditions, in capital letters, are the words "GUARANTY OF PAYMENT." Under the guaranty paragraph is the signature "N. W. Bunker Jr." Underneath this paragraph is a printed form of "ASSIGNMENT" which transferred to "First National Bank" the interests of Tri-State therein under date of May 20, 1971. On the copies of these contracts introduced by Bunker (Deft's Exh. 17) the same conditions appear but on these copies there is an absence of the guaranty and the assignment paragraphs. On the first page of the contracts under "NOTICE TO THE BUYER" are the words: "(2) You are entitled to a completely filled in copy of this contract when you sign it. Keep it to protect your legal rights."

Both attending doctors testified as to Bunker's mental and physical condition in the hospital at the time of signing. Although neither doctor claimed to have any special training in mental illness, they had observed Bunker regularly at least twice daily during his hospitalization. Their descriptions of his condition ranged from the observation that he appeared to be "confused most of the time" (Tr. 305) as well as "not mentally competent" (Tr. 309 Dr. Burge) to testimony that on no occasion was Bunker able to "comprehend [or] conduct business" and his "mental capacity [was] impaired." (Tr. 327, 334 Dr. Talbot). The Bank has conceded that "for the purpose of this appeal [incompetency] is accepted as proved since the trial court found this to be a jury issue" (Appellee's Brief, at 23). Rather, appellee relies on Bunker's conduct after he had regained competency to establish his ratification of the guaranties. Appellee argues, and the trial court agreed, that the fact of ratification is so conclusive that no reasonable man could have found to the contrary.

The facts relied on by appellee are as follows:

In September 1971 Bunker received a telephone call from an officer of the Bank who demanded payment of the delinquent installments payments. Bunker testified that he had understood the obligation to be that of the corporation and that he was not cognizant of any personal liability; that he retained an attorney, Warfield; that together they went to the office of attorney Russell in Greenville; that Russell denied knowledge of the circumstances but that he volunteered to go to Jackson to clarify the situation with the Bank.

By letter dated September 23, 1971, Russell advised Bunker of his trip to Jackson and that the Bank (through an officer and its attorney) was "very much disturbed over the delinquent status of the account of Norge Villages, Inc." (Deft's Exh. 19); that the Bank was sending to him [Russell] "a demand letter with the amount necessary to be paid within the ten day period to bring the account current"; that "the five years already carried by the paper was too long a period of time for financing laundry equipment"; and that "unless

this account is brought current * * * direct action will be instituted against you and Tri-State to effect collection." There was no mention of a guaranty. Except for the threat of an action "against you" the letter speaks in terms of Norge Villages' corporate account.

Thereafter, Bunker applied to the First National Bank of Greenville, Mississippi, for a loan to pay the past due installments. On October 4th, Bunker secured a personal loan of $8,649.98. A cashier's check showing Norge Villages of Greenville, Inc., as the remitter was sent to the Bank.

Based upon these facts, the trial court decided that Bunker had ratified his personal guaranty commitments as a matter of law. But this was not a non-jury case in which the Court was the sole trier of the facts. The record is not devoid of facts from which reasonable men (the jury) could differ: (1) there was no mention of a personal guaranty in the original contract of March 30, 1971; (2) Mrs. Foley said that she was not aware of one, Bunker testified to the same effect; (3) Bunker had the installment contract obligations taken in the name of a corporation; (4) Bunker's attorney had not drawn the installment contracts; (5) the printed installment contract forms used were supplied by Tri-State; (6) the copies of the contracts available to Bunker and Mrs. Foley did not contain executed guaranties even though they were entitled to "filled in" documents; (7) Bunker reacted with surprise when the Bank official informed him of his personal obligation and he retained an attorney to investigate; (8) Russell's professed lack of knowledge of any guaranty; and (9) Bunker's partial payment, not on any personal guaranty but on the corporate contract obligations. All of these facts should have been weighed in Bunker's favor when the Bank moved for a directed verdict. Such weight as a jury might give to these facts is not for appellate speculation but from any point of view they are

facts sufficient to present a jury question on the issue of ratification.

Reversed and remanded for a new trial.